### DUNN *vs.* THE COMMERCIAL BANK OF BUFFALO.

Where by the terms of the charter of a bank, and of the certificates of stock issued by the bank, its stock can only be transferred on the books of the bank, by the stockholder or his attorney, the bank is under no obligation to permit a transfer to be made to a person claiming to be the assignee of a certificate, on the presentation of such certificate with an assignment and power of attorney executed by the original holder, in *blank,* no person being named or specified as the assignee or attorney.

Nor can an action of assumpsit be maintained, against the bank, for refusing to permit such transfer, without proof by the plaintiff that he had purchased the certificate, and was the owner thereof.

Dunn *v.* Commercial Bank of Buffalo.

A person purchasing stock and taking an assignment of the certificate, executed in blank, is authorized to write in his own name as assignee of the stock, and such name as he chooses, as the attorney to make the transfers. But the naked possession of the certificate and blank assignment and power of attorney is no evidence of title.

Although a bank may have authority to *permit* a transfer of stock to be made, upon its books, it has no right to *make* the transfer, unless empowered by the original holder of its certificates, or by the assignee thereof.

A power of attorney, executed by the assignee of a certificate, authorizing the attorney to ask, demand, and require of the proper officers of the bank to assign and transfer into the name of the assignee, upon their books, the shares mentioned in the certificate, confers no authority upon the attorney, or upon the bank, to make the transfer.

THIS was an action of assumpsit, tried before the late Hon. SETH E. SILL, at the Erie circuit, in September, 1850. The declaration was for refusing to transfer, or permit the transfer, of certain shares of the defendant's stock to the plaintiff, on its books. The defendant pleaded the general issue. The certificates of stock were in the following form:

"No 314.                    *Commercial Bank of Buffalo.*

It is hereby certified that John Cleveland Greene, is entitled to one hundred shares of one hundred dollars each in the capital stock of the Commercial Bank of Buffalo, transferable only on the books of the bank by the said stockholder or his attorney on surrender of this certificate.

In testimony whereof, the cashier has set his hand this 24th day of June, 1836.

      100 shares.                    J. STRINGHAM, cashier."

Of said certificates, two were in the name of John W. Buckland, and the other two in the name of John Cleveland Greene, and they were all dated June 24, 1836. The plaintiff proved that Israel T. Hatch was the president of the bank at the time of the date of such certificates, and from that time until the year 1840. That there was a stock transfer book kept in the bank, in which transfers of stock were made, and that the book, as well as the other affairs of the bank, was under the general charge of the president.

The certificates were numbered as follows: 303, 304, 305 and

306; and to each of said certificates, No. 303, 305 and 306, was attached an instrument in the following form: "Know all men by these presents, that I, John Cleveland Greene, for value received, have bargained, sold, assigned and transferred, and by these presents do bargain, sell, assign and transfer unto

one hundred shares of the capital stock of the Commercial Bank of Buffalo hereunto annexed, standing in my name on the books of said bank, and do hereby constitute and appoint

my true and lawful attorney irrevocably, for me and in my name and stead but to my use, to sell, assign, transfer and set over all or any part of the said stock; and for that purpose to make and execute all necessary acts of assignment and transfer, and one or more persons to substitute with like full power, hereby ratifying and confirming all that my said attorney or his substitute or substitutes shall lawfully do by virtue hereof. In witness whereof I have hereunto set my hand and seal the sixteenth day of July one thousand eight hundred and thirty-six. Sealed and delivered in presence of M. H. Fryer.          J. C. GREENE." [L. S.]

To certificate No. 304, was attached a similar instrument, except that the name of John Henry Dunn of the province of Upper Canada, gentleman, was written therein with a pencil in the blank space intended for the name of the assignee, but not in the space intended for the name of the attorney. Two of said instruments were dated November 12, 1836; one July 16, 1836, and one August 6, 1836; and they were numbered with numbers corresponding with the number of the certificate to which they were respectively attached.

The plaintiff then called as a witness George R. Babcock, who testified that the plaintiff resided in Canada in the years 1836, 1837 and 1838. The plaintiff then introduced and proved a power of attorney from him to said George R. Babcock, which was as follows: "Know all men by these presents, that I, John Henry Dunn, of Toronto, Upper Canada, do hereby irrevocably constitute George R. Babcock of Buffalo our attorney with power of substitution to ask, demand and require of the proper officers of the Commercial Bank of Buffalo to assign and trans-

fer into my name on their books the stock or shares assigned to me by J. C. Greene and J. W. Buckland, or either of them, hereby ratifying and confirming all acts lawfully done in the premises, by our said attorney or his substitute, in virtue hereof. Witness our hand and seal this thirteenth day of December, 1837.

Sealed and delivered in pres- JOHN H. DUNN." [L. S.]
 ence of Henry Jessup.
   J. J. R. Dunn.

The certificates, with the instruments annexed thereto, were received by Babcock from the plaintiff in the fall of 1837, and the power of attorney on the 13th of December of the same year. At the time of their receipt they were annexed together, with wafers; each certificate being annexed to the bill of sale and power of attorney relative to the same. Babcock, after and about the time he received the power of attorney, went with it and the certificates, so annexed to the Commercial Bank of Buffalo, and made a demand of Mr. Hatch, president of the bank, to transfer the said stock on the books of the bank to the plaintiff, and to issue to him new certificates, and at the same time showed him all of said papers. The president declined to make such transfer, but requested a memorandum of the numbers, amounts, and dates of the certificates, which Babcock furnished him. The president made no objection to the form or substance of the papers.

Evidence was given of the value of the stock, from which it appeared that the market value at the time of the demand of transfer was about 50 per cent. The defendant offered to prove that at the time of the demand, it had procured, on its own bill, an injunction against several persons, among whom were the said Buckland and Greene, to restrain them from transferring the stock, and that such injunction had been served on Buckland and Greene, before they transferred to the plaintiff. It did not offer to prove the allegations of its bill, but simply proposed to read the bill and proceedings. The defendant's counsel claimed this to be a full defense to the suit. This defense was excluded, and the defendant excepted.

The counsel for the defendant submitted to the court, that as to the three certificates to each of which an instrument claimed

to be an assignment and power of attorney was attached, in which said instruments however no person was named or specified as the assignee or attorney, the bank was under no obligation to cause or permit the assignment thereof to the plaintiff on the production of said blank assignments and power of attorney. That as to those three certificates, no evidence had been presented on the trial that the plaintiff was the assignee thereof, or entitled to the same.    That as to the fourth certificate, no person was named as attorney.    But the court overruled the objections, and ruled and decided that the plaintiff, upon the evidence already given, was entitled to recover as to the whole four certificates. To which decision the counsel for the defendant excepted.

The court charged the jury that the plaintiff was entitled at any rate to nominal damages.    The counsel for the defendant excepted.    The jury rendered a verdict for the plaintiff for $22,024,67 ; and the defendant, upon a bill of exceptions, moved for a new trial.

*S. G. Haven*, for the plaintiff.

*S. G. Austin*, for the defendant.

*By the Court*, TAGGART, P. J.    In the case of the *Commercial Bank of Buffalo* v. *Kortright*, (22 *Wend.* 348,) the stock, together with a note of $10,000, was placed in the hands of Barton, with the name of the stockholder indorsed on the back of the certificate, and a seal attached thereto, with express authority to Barton to obtain a loan upon the stock for the sum of $10,000.    Barton negotiated the stock by delivery to Kort-right, and obtained a loan of $25,000.    Kortright gave a receipt for the stock, promising to return it on payment of the $25,000 with interest, on demand, after thirty days from the date of the receipt.    Kortright wrote over the signature of the original stockholder a transfer of the stock to himself, constituting S. A. Sherwood an attorney to do all necessary acts to perfect the transfer.    After the expiration of the thirty days specified in the receipt given by Kortright, Sherwood went to the Bank of Buffalo and requested permission to transfer the stock, which

was refused by the original stockholder, who was then acting as president of the bank, on the ground of apprehended difficulty in respect to the note of $10,000 which had not been transferred to Kortright although he received the $10,000 from Barton, and as it appeared on trial that he had obtained the note.

There is a manifest distinction between that case and this. Here there is no evidence that the plaintiff Dunn purchased the certificates. He holds in his hands the naked blank assignments and the certificates. He does not prove that he owned them, or had any interest in them whatever. It is true he had possession of the certificates standing in the name of Greene and Buckland, and attached to such certificates were blank assignments and powers of attorney authorizing the transfer to blank by blank attorney. If the plaintiff was the purchaser of these certificates, he was undoubtedly authorized by reason of such purchase, and his ownership thereof, to write in his own name as assignee of the stock, and such name as he chose as the attorney to make such transfer. So far the case of *Kortright* v. *The Commercial Bank of Buffalo* decides. But it does not decide that the naked possession of the certificates and blank assignments and powers of attorney is evidence of title.

Are certificates of stock, in reference to negotiability, placed on substantially the same grounds as bills of exchange and promissory notes? Are they transferable by mere indorsement and delivery? Are a bond and mortgage or any other evidences of debt not negotiable, assignable by the mere act of writing the name of the party on the back and delivering the instrument with the name so indorsed, without any consideration or agreement? If not, is it not incumbent upon the party claiming under such transfer, to prove the contract or consideration? I have found no case where the holder of an instrument was authorized to write the contract on which he claimed, over the signature or indorsement, except where the proof of the consideration and contract was first made. (*See Leonard* v. *Vredenburgh*, 8 *John.* 29; *Bailey* v. *Freeman*, 11 *Id.* 121; *Herrick* v. *Carman*, 12 *Id.* 159; *Nelson* v. *Dubois*, 13 *Id.* 175; *Campbell* v. *Butler*, 14 *Id.* 349.). So in the case of *Kortright* v. *Commercial*

*Bank of Buffalo,* an agreement and consideration was proved. But in this case the court are called upon to presume from the plaintiff's possession of the certificates and blank assignments and powers of attorney annexed, that he purchased the stock of Greene and Buckland, and that his name was inserted or assumed to be inserted in the instrument as assignee. The plaintiff not only asks the court to assume the existence of the contract or consideration to support the assignment, but that the name of Israel T. Hatch, or the bank itself, is inserted in the instrument as the attorney of Greene and Buckland, and that they are thereby authorized to assign the stock on the books of the bank to the plaintiff.

It seems to me that this is carrying the rule—already sufficiently broad—beyond all precedents on that subject; and for one I can not consent to extend it beyond cases already adjudicated.

There is another difficulty in the way of the plaintiff's right of recovery. Admitting that he is the actual owner, as assignee, of the stock, the power and authority to assign it upon the books of the bank must come from him. The bank had no authority conferred upon it by the instruments annexed to the certificate. Greene and Buckland had given no power either to the bank or any of its officers. All the power which they had given was in the plaintiff. Although the bank might permit the assignment, it had no authority to make it. The plaintiff authorized Babcock to demand an assignment, not to make it. The power of attorney to Babcock confers no authority whatever upon him, or upon any other person, to make the transfer upon the books. The plaintiff assumes in making that power of attorney, that the bank already possessed all the requisite power to make the assignment, and he therefore simply empowers Babcock "to ask, demand, and require of the proper officers of the Commercial Bank of Buffalo, to assign and transfer into my name on their books the stock or shares assigned to me by J. C. Greene and J. W. Buckland or either of them." He gave Babcock no power to make the assignment, and gave the bank officers no power to make it, but demands of the bank the performance of an act

which neither it or any of its officers had any authority to perform.

It follows then that the ruling of the judge at the circuit, that "the plaintiff was entitled to recover as to the whole four certificates," and his charge to the jury, to the same effect, was erroneous. A new trial must therefore be granted.

It is unnecessary, with the view I have taken, to notice the other points in the bill of exceptions. Having arrived at the conclusion that the plaintiff is not entitled to recover, on the grounds before stated, I give no opinion upon the decision at the circuit as to the admission or rejection of evidence, or the measure of damages, or whether the proceedings in the court of chancery and service of the injunction constituted a defense to the action.

[ORLEANS GENERAL TERM, February 9, 1852. *Taggart, Marvin* and *Hoyt,* Justices.]

