## DETERMINED IN THE

# FIRST DEPARTMENT,

### AT

## GENERAL TERM,

## May, 1883.

---

## LOUISA H. BARCLAY, RESPONDENT, v. DELOS E. CULVER, APPELLANT.

*Loan of shares of stock — when the identical certificate need not be returned.*

The defendant signed an instrument by which he acknowledged that he had received from the plaintiff 100 shares of the stock of a railroad company as a loan to be returned by him on or before a day named, or at his option to be paid for at a price specified. The certificate loaned was in the usual form. Upon its back was a power of attorney, signed by the plaintiff, authorizing the transfer of the stock upon the books of the company.

*Held*, that it was the intention of the parties that the defendant should use the shares of stock borrowed, and if necessary put the certificate into circulation in the ordinary way; that it was not necessary that he should return the identical certificate borrowed, but it was sufficient if he restored 100 shares of the stock of the corporation, no change having occurred by reason of which they did not represent the same proportion and value of the capital of the company as those loaned.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

*Culver & Betts*, for the appellant.

*Chas. Blandy*, for the respondent.

HUN—VOL. XXX.

DAVIS, P. J. :

This action is brought upon an instrument in the following words:

NEW YORK, *January* 1, 1875.

Received from E. K. Alburtis, one hundred shares of the Jersey City and Albany Railroad Company, as a loan, to be returned to him on or before the second day of April, 1875, or to be paid for at my option twenty-five per cent in par value, or say twenty-five hundred dollars for said one hundred shares of stock.

D. E. CULVER.

It was proved that on executing this receipt, E. K. Alburtis delivered to the defendants a certificate for said stock, which was in the following form :

*Number* 11.                                                     100 *Shares.*

THE JERSEY CITY AND ALBANY RAILROAD COMPANY.

*Incorporated under the Laws of the States of New Jersey and New York.*

This is to certify that E. K. Alburtis is the holder of one hundred shares of the capital stock of the New Jersey and Albany Railroad Company. This certificate is held subject to the by-laws of the company, and is transferable only on the books of the company by the said stockholder in person, or by attorney on surrender of this certificate.

In witness whereof, the said company has caused this certificate to be signed by its president and secretary, this fourth day of July, 1873.

E. K. ALBURTIS,
*President.*

AMES TOMPKINS,
*Secretary.*

On the back of which was the following power of attorney, executed by Alburtis :

For value received          do hereby sell and transfer          the shares of capital stock within mentioned of the Jersey City and Albany Railroad Company, and do hereby constitute and appoint

D. E. Culver & Co. my attorney in fact to transfer the same on the books of said company, with power to substitute any person for that purpose.

In witness whereof,     have hereunto set     hand and seal this     day of     , 18 .

E. K. ALBURTIS. [L. S.]

In presence of J. A. HAYWARD.

Evidence was given on the part of the defendant tending to show that in the month of March, 1875, the defendant told Alburtis that he had the stock ready for him and asked him if he should have the certificate made out in his (Alburtis') name or if he should have it made out in his own name and assign it in blank to him; that Mr. Alburtis replied that he did not know yet, he did not care for the stock then and that he should let him (Culver) know later on; that subsequently, and some time in 1876, Alburtis called upon him and demanded the return of the identical certificate of stock which he had loaned him; that he told Alburtis that it was impossible and he knew it; that he (Alburtis) knew the purpose for which he (Culver) borrowed it and the use to which it was put and that such a demand was absurd, and that it was made for the purpose of avoiding taking stock that he (Culver) had for him, and had kept ready for him all the while, and to make him (Culver) pay the $2,500 instead.

The defendant produced a certificate for 100 shares of stock of said Railroad Company which he testified represented the 100 shares that he held for and offered to Mr. Alburtis in payment of the stock borrowed from him; that he had this stock when he called on Alburtis in March, 1875; that Mr. Alburtis never elected whether he should have it issued directly to him in his own name or have it issued to defendant and assigned to him; that after Mr. Alburtis demanded a return of the identical certificate witness had borrowed, or payment of the $2,500, witness had this certificate made out to himself and assigned it to Mr. Alburtis and offered it to him but he declined to take it. The certificate was received in evidence and is identical in form with the other, except that it certifies that Culver is the owner of the stock, and on the back is a power of attorney transferring the stock duly executed by Culver to E. K.

Alburtis, bearing date 4th September, 1876. The defendant offered to show, in substance, that the custom in such cases was not to return the same certificate but a certificate for the same amount and kind of stock. This offer was excluded and the defendant excepted. The court held substantially, and so charged the jury against the exception of the defendant, that under the contract contained in the receipt the defendant was bound to return the identical certificate of stock which he received from Alburtis, and that in default of so doing he was liable to pay the sum of $2,500, and that the contract could not be satisfied by the return of 100 shares of the same kind of stock.

In our opinion the court erred in this ruling. The loan made was not of the instrument called a certificate, certifying ownership of 100 shares of the capital stock of the railroad company, but of 100 shares of the stock, represented by the certificate. The receipt containing the defendant's contract is to be read in connection with that certificate, and so read, the papers show that the stock was expected and designed to be used by the defendant, and was put in such position that it could be so used, for the power of attorney on the back was completely executed by Alburtis and authorized and appointed the defendant his attorney in fact to transfer the stock on the books of the company, with power to substitute any person for this purpose. This meant that he could put the stock into circulation in the ordinary way, so that its ownership could be transferred from hand to hand, and is in conflict with the idea that the identical stock or the identical certificate was to be kept in such shape that it, and it alone, could be returned upon the contract. The loan was one for use, and was undoubtedly so designed, otherwise it was an idle transaction; and the mode of use was provided for by the power of attorney, to wit, by transfer upon the books of the company, and such transfer of necessity put the stock in condition where its identity might be lost, if its use was to be of any value to the borrower. He was at liberty to exercise the power of transfer which both parties must have understood was likely to have put the identical stock beyond reach. The court is at liberty to take notice of the usage of business in such matters, and to know that upon such loans the intention of the parties is fully answered by restoration of 100 shares of the stock of the cor-

poration, no change having occurred by reason of which it does not represent the same proportion and value of the capital of the company.

The principle which governs such transactions is found in the early decision of the chancellor in *Nourse* v. *Prime* (4 Johns. Ch., 490; S. C., 7 Johns., 69), and it has been since followed by the court in all similar cases. (*Horton* v. *Morgan*, 19 N. Y., 170; *Baker* v. *Drake*, 53 N. Y., 211). What a share of the capital stock of a corporation is, was defined by *Burrall* v. *Bushwick Railroad Company* (75 N. Y., 211). That a share of the capital stock is the right to partake, according to the amount put into the funds, of the surplus profits of the corporation, and ultimately on the disposition of it, of so much of the funds thus created as remains unimpaired and is not liable for the debts of the corporation, and that these shares are intangible and rest in abstract legal contemplation, and that the share itself cannot be issued and delivered as a physical act, and that what the company can do is to issue and deliver the written evidence of the existence of such shares and of the ownership thereof, the paper usually called a stock certificate.

Each share is of course the equal of every other share, and when it comes into public business as a matter of purchase and sale its identity as a thing that passed through A.'s or B.'s hands is entirely immaterial so long as each share continues to represent the same interest in the corporate capital.

We think, therefore, the learned judge erred in the application of the rules of law to the transaction between the defendant and the plaintiff's assignor, and for that reason the judgment should be reversed and a new trial granted, with costs to abide event.

BRADY and DANIELS, JJ., concurred.

Judgment reversed, new trial ordered, costs to abide event.